Larry L. THOMAS, Plaintiff,

v.

**MISSISSIPPI STATE DEPARTMENT OF HEALTH, Walter Booker, William C. Hewitt, and Kathy Ginn, Defendants.**

Civil Action No. 3:93–CV–98WS.

United States District Court, S.D. Mississippi, Jackson Division.

March 22, 1996.

David W. Baria, Jackson, MS, for plaintiff.

Rickey T. Moore, Office of the Attorney General, Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

This lawsuit was tried to the court sitting without a jury [1] on the dates of September 12 and 13, 1995. The plaintiff here is Larry L. Thomas, an African–American male, who professes to be a recovered drug addict. The defendants in this lawsuit are the Mississippi State Department of Health ("Health Department"); Walter Booker, Health Department Director of Compliance; William C. Hewlitt, Health Department District Administrator for District VII; and Kathy Ginn, Health Department Epidemiology Nurse. At center stage here is an analysis of the reach of the Americans With Disabilities Act of 1992, Title 42 U.S.C. § 12101, et seq., ("ADA"). Invoking the ADA,[2] plaintiff, an unsuccessful candidate for a job with defendant Health Department, accuses defendants of having violated the ADA by refusing to hire him because of his prior history of drug addiction. Since plaintiff relies on the ADA, this court's jurisdictional grant to hear this case is predicated upon Title 42 U.S.C. § 12101,[3] et seq., and Title 28 U.S.C. § 1331.[4] During the course of this two-day trial, both sides called witnesses and produced exhibits. Plaintiff called six witnesses, while the defense examined five. At the conclusion of trial, after having heard all of the evidence and arguments of counsel, this court announced its bench opinion, finding that the plaintiff had not carried his burden of per-

---

1. By this court's order dated October 19, 1994, pursuant to Title 42 U.S.C. § 1981a(a)(2) and (c), this court held that plaintiff had a right to trial by jury. At the time, plaintiff was proceeding pro se. Later, after plaintiff secured assistance of attorneys, he waived this right and consented to a bench trial.

2. Plaintiff also brought a lawsuit under Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e, alleging that he had been discriminated against on the basis of his race which was dismissed by United States District Court Judge Tom S. Lee on November 12, 1993. See Thomas v. Jackson County Health Department and Delta

Hills Public Health District III, Civil Action No. J92–0274(L)(N).

3. Title 42 U.S.C. § 12101 states the purpose of the Americans With Disabilities Act. This Act prohibits discrimination on the basis of disability and requires that disabled individuals be given the same consideration for employment, public accommodations and public services that individuals without disabilities are given.

4. Title 28 U.S.C. § 1331 provides:
 The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

suasion. Now, pursuant to Rule 52, Federal Rules of Civil Procedure, this court sets out more fully its findings of fact and conclusions of law.

## SUMMARY OF THE FACTS

From 1977 until 1990, plaintiff was employed by defendant Health Department as a Disease Intervention Specialist Agent ("DIS Agent"). Sometime in 1987 plaintiff developed an addiction to crack cocaine and in 1988 was involuntarily confined in a drug rehabilitation program for approximately thirty days. The Health Department placed him on administrative leave. Thereafter, plaintiff returned to work. He also resumed his drug abuse. On October 2, 1989, plaintiff was again placed on administrative leave when he voluntarily committed himself to another thirty-day drug rehabilitation program. Plaintiff later returned to work, but again he brought back with him the same problems. Consequently, in January of 1990, plaintiff was officially terminated from employment with the Health Department due to excessive absenteeism and negligence, caused primarily by his drug addiction.

After the passage of two years, in 1992, plaintiff applied for a DIS position with the Health Department. He alleged that he was a recovered addict. To qualify for an interview for the position of DIS agent, the applicant must have a college degree and a valuative score of at least seventy which is determined by consideration of the applicant's education and years of work experience. Based upon these scores, the names of the top ten applicants are submitted to the local agency head as qualified candidates. The local agency is then free to choose anyone on the list for the job opening. Thomas received a valuative score which qualified him for an interview. On July 7, 1992, plaintiff was interviewed for an available DIS position in District VII[5] by defendants Booker, Hewitt and Ginn. According to the plaintiff, during the interview he was asked a series of questions about his prior drug addiction. He was not selected for the DIS position. Plaintiff attributes his non-selection to the series of questions allegedly asked about his prior drug use.

The defendants deny the plaintiff's accusations. Rather, they say they did not recommend the plaintiff for employment because: (1) he had been terminated by the Health Department for absenteeism and negligence; (2) his application for employment indicated that he had been unemployed since January of 1990; and (3) he was not a local resident familiar with the citizens in the community. Defendants maintain that they hired instead a Lloyd Jones, an individual who had a good prior work record, a master's degree, and who was a local resident familiar with the community and its citizens. Furthermore, defendants contend that during his interview Mr. Jones expressed a certain degree of interest in the job superior to that of the plaintiff's.

## ANALYSIS

At issue here is whether the defendants violated the ADA. Plaintiff alleges that he was denied the DIS position because they did, in two respects: first, by asking plaintiff various questions concerning his drug addiction; and, secondly, by negatively considering plaintiff's prior unsatisfactory performance with and discharge from the Health Department. According to plaintiff, since his drug addiction caused these circumstances, defendants were prohibited from considering them.

A plaintiff may establish a claim of disability discrimination under the ADA by presenting either direct evidence of discrimination or indirect evidence of discrimination by the method of proof established for Title VII actions in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *Daigle v. Liberty Life Insurance Company*, 70 F.3d 394, 396 (5th Cir.1995). Therefore, in the absence of direct evidence of disability discrimination, a plaintiff can state a prima facie case of disability discrimination by showing that: (1) he suffers from a disability; (2) he is qualified for the job; (3) he was subject to an adverse

5. District VII consists of the following Mississippi Counties: Adams, Amite, Franklin, Jefferson, Lawrence, Lincoln, Pike, Walthall, and Wilkinson.

employment action; and (4) he was replaced by a non-disabled person or was treated less favorably than non-disabled employees. *Id.*

 Once the plaintiff has stated a prima facie case, the burden shifts to the defendant who must then articulate some non-discriminatory reason for its action that adversely affected the employee, *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), and support this reason with the production of evidence "which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 508, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993). If the defendant satisfies this production burden, the plaintiff may then offer evidence of pretext, that the defendant's alleged non-discriminatory reason is untrue and merely a ruse. Once the evidentiary production burden of the parties has run its course and the court is satisfied that neither side is entitled to a verdict since the issues being in equipoise are ripe for a factfinder, the shifting burden scheme becomes irrelevant.

 Of course, from the time the lawsuit is filed until its end, the plaintiff has the ultimate burden of persuasion. *St. Mary's Honor Center v. Hicks,* at 511, 113 S.Ct. at 2749. The plaintiff is required to persuade the factfinder by a preponderance of the evidence that the defendant's intent was to discriminate against the plaintiff because of his disability. *Daigle,* 70 F.3d at 396–97 (5th Cir.1995). In order to meet this burden, the plaintiff must propagate that evidence which tips the scales of justice on his side. 32A C.J.S. Evidence § 1018 (preponderance of the evidence means evidence which is of greater weight or more convincing than that which is offered in opposition); *see also Heartland Federal Savings & Loan Association v. Briscoe Enterprises d/b/a Regalridge Apartments,* 994 F.2d 1160, 1163 (5th Cir. 1993) (preponderance means that it is more likely than not). If plaintiff succeeds in this regard, then the verdict should be for the plaintiff. If the plaintiff fails, then the verdict should be for the defendants.

During the course of the trial, plaintiff and defendants presented diametrically opposed testimony as to what occurred during the interview. Plaintiff's version is that during the interview he was asked specific questions about his drug addiction and treatment, namely: how his rehabilitation program was progressing; whether he was still attending Narcotics Anonymous meetings; how he would feel about working with people who had problems with drugs; whether he had any drug concerns; and the type of drugs he used. Defendants have denied plaintiff's assertions. Defendants claim that while the information about plaintiff's drug addiction and subsequent treatment did come out at the interview, it was the plaintiff who volunteered this information about his prior experience with drugs and his rehabilitation efforts.

 Having carefully weighed plaintiff's and defendants' evidence, the court finds that the defendants' version of the facts more credible. In arriving at this conclusion, the court took into account the demeanor of the witnesses, their interests in the case, the internal consistency of their testimony and the impeachment factor owing to contradictory evidence. *Justiss Oil Co., Inc. v. Kerr–McGee Refining Corp.,* 75 F.3d 1057, 1067 (5th Cir.1996) ("In a non-jury trial, credibility choices and the resolution of conflicting testimony remain the province of the judge...."); *Reich v. Lancaster,* 55 F.3d 1034, 1045 (5th Cir.1995) ("The trial judge's 'unique perspective to evaluate the witness and to consider the entire context of the evidence must be respected.'"); *Louis v. Blackburn,* 630 F.2d 1105, 1109 (5th Cir. 1980) ("One of the most important principles in our judicial system is the deference given to the finder of fact who hears the live testimony of witnesses because of his opportunity to judge the credibility of those witnesses."); Fed.R.Civ.P. 52(a) ("... due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). Accordingly, this court credits defendants' testimony that plaintiff was not recommended or hired because: (1) he had been terminated by the Health Department for absenteeism and negligence; (2) his application for employment indicated that he had been unem-

ployed since January of 1990; and (3) he was not a local resident familiar with the citizens in the community. This court further credits defendants' testimony that they did not interrogate plaintiff on the points of his drug addiction and efforts to rehabilitate himself. These findings thoroughly undermine plaintiff's case.

But, notwithstanding these findings, even had the plaintiff persuaded the court that the defendants had asked the challenged questions, this court still would have found no liability under the ADA on this point. The very language of the ADA supports this court's conclusion. That same language in this court's eye insulates the defendants' consideration of plaintiff's prior work history with the Health Department.

The sainted aim of the ADA is to eliminate discrimination against those individuals who have disabilities. The act states that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, other terms, conditions and privileges of employment." Title 42 U.S.C. § 12112(a). Covered entities are defined as "an employer, employment agency, labor organization, or joint labor management committee." Title 42 U.S.C. § 12111(2). Disability is defined as a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such impairment, or being regarded as having such an impairment. Title 42 U.S.C. § 12102(2)(A), (B), (C). While there is no "laundry list" of impairments that are considered disabilities, recognized disabilities include those physical or mental impairments which limit or substantially limit caring for ones self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, sitting, standing, lifting, and reaching. 29 C.F.R. § 1630.2(i), (j), App.

Under the ADA, an individual with a disability is qualified for employment where that individual, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Title 42 U.S.C. § 12111(8); see also Daigle v. Liberty Life Insurance Company, 70 F.3d 394, 396 (5th Cir.1995). The ADA requires that consideration be given to the employer's judgment as to what functions of a job are essential. Id. An individual is not a "qualified individual with a disability" if that individual, at the time of his employment or application for employment, engages in the illegal use of drugs, "when the covered entity acts on the basis of such use." Title 42 U.S.C. § 12114. An individual who has successfully completed or participated in a supervised drug rehabilitation program and no longer engages in the illegal use of drugs is considered qualified under the ADA. Title 42 U.S.C. § 12114(b)(1), (2). The ADA prohibits an employer covered under the act from making inquiries of job applicants as to nature of their disability, or even whether the applicant has a disability. Title 42 U.S.C. § 12112(d)(4)(A). The employer may ask, however, those questions that are shown to be job-related and consistent with business necessity. Id.

The ADA permits an employer covered by the act to "hold an employee who engages in illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee." Title 42 U.S.C. § 12114(c)(4).

During the course of the trial, plaintiff has argued that if defendants took into account plaintiff's poor job performance—absenteeism, negligence, and subsequent dismissal—the ADA has been violated because plaintiff was only absent because of his disability, i.e., the drug addiction and treatment. This argument, however, is completely undermined by § 12114(c)(4) of the ADA which does not require an employer to give any special concessions for the behavior of individuals who are substance abusers. Indeed, an employer can hold an individual who abuses drugs or alcohol to the same standard of job performance as that of people who do not abuse drugs or alcohol. Thus, plaintiff's ar-

gument that the defendants' consideration of his termination for absenteeism and negligence due to his drug addiction is a violation of the ADA is simply not valid.

The court now looks at whether the questions allegedly asked of the plaintiff would violate the ADA. As previously stated, the court is not persuaded that questions concerning plaintiff's drug abuse and subsequent treatment were asked by defendants. But, suppose defendants had done so. Plaintiff's contention is that once an individual interviews for a position and says that he is a former drug addict and no longer using drugs, the mouth of the interviewer is then sealed, rendering the interviewer unable to make any more inquiries.

The ADA clearly requires that a disabled individual be qualified. Title 42 U.S.C. § 12112(a). In the case of a drug abuser, the individual must show that either he has been or is being rehabilitated or was erroneously accused and that he no longer uses drugs. Title 42 U.S.C. § 12114(b). Surely an employer can inquire as to whether an applicant, like the plaintiff, is currently in a program or uses drugs. These questions would go to the core of whether the applicant is qualified, and unless an applicant is qualified there is no discrimination.

Furthermore, the ADA provides a specific exception to its ban on employer inquiries about disabilities. Where the inquiry is shown to be job related and consistent with business necessity, the employer is excused from the prohibition. Title 42 U.S.C. §§ 12112(c)(2)(A)(B) and 12112(d)(4)(A). Plaintiff applied for the position of DIS agent. The primary duty of a DIS agent is to locate individuals with infectious diseases and isolate them from the public for treatment to prevent further spread of the disease. According to the defendants, rapid isolation of the infected individuals is imperative, requiring that the DIS agent be dependable, reliable and keenly perceptive. Clearly, one suffering an addiction disability would be incapable of performing the demanding and critical tasks of a DIS position. Moreover, to entrust such a position to an unrecovered addict would thrust upon an unsuspecting public an unnecessary peril and violate the public's trust.

Finally, the court notes that throughout the text of the ADA, the use of drugs in the workplace is frowned upon. The act encourages employers to prohibit drug use and to implement rules and regulations to detect drug use. *See* Title 42 U.S.C. § 12114(c) and (d). These efforts to eradicate drug abuse from the workplace would be but hollow expressions if on the other hand the Act's prohibitionary language prescribing what questions an employer could ask of a prospective job applicant were so restrictive that unrecovered addicts are insulated from exposure. Still, plaintiff reads the ADA as having erected an interrogatory force field around his disability, that once he stated he once was an addict, but is now recovered, the defendants were precluded from asking any questions whatsoever. Defendants could not, for example, ask what rehabilitation program plaintiff attended, how long he stayed there, how many times he attended such programs, whether he committed himself or was involuntarily committed, what was his drug of choice and how serious was his addiction. This court does not read the ADA to be so restrictive in this instance.

In conclusion, this court finds that plaintiff here has failed to carry his burden of persuasion. The court has accepted defendants' version of the facts and rejected plaintiff's. Furthermore, the court finds that the very language of the ADA is hostile to plaintiff's claims. Accordingly, the court finds for the defendants and against the plaintiff. A separate judgment shall be entered in accordance with the local rules.

**SO ORDERED AND ADJUDGED.**