**Robert J. INGLES, Plaintiff,**

v.

**The NEIMAN MARCUS GROUP, d/b/a Neiman Marcus, Defendant.**

**Civil Action No. H–95–5447.**

United States District Court,
S.D. Texas,
Houston Division.

July 30, 1997.

Pyllis A. Finger, Houston, TX, for Plaintiff.

Arlene S. Steinfield, Bryan P. Neal, Thompson & Knight, Dallas, TX, for Defendant.

### MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court are Defendant The Neiman Marcus Group d/b/a Neiman Marcus's ("NMG") Motion for Summary Judgment (# 22) and Plaintiff Robert J. Ingles's ("Ingles") Motion for Partial Summary Judgment (# 24). NMG seeks summary judgment on Ingles's claim that it violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Ingles seeks partial summary judgment on the issue of NMG's liability under the ADA.

Having reviewed the pending motions, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that NMG's motion should be granted and Ingles's motion should be denied.

### I. *Background*

Ingles was employed by NMG as a waiter at its Town and Country Mall location in Houston, Texas, from November 1988 until he resigned in November 1996. In the mid-to-late 1980s, Ingles was diagnosed with diabetes, although he did not experience symptoms until around 1990. The type of diabetes from which he suffers involves vascular disease and peripheral sensorimotor neuropathy affecting his feet. In 1991, Ingles developed an ulceration on his right foot, requiring surgery to amputate a toe and part of the bone behind the toe. As a result, Ingles did not work from January 1991 until April 1991. In late 1992, Ingles was diagnosed with a second ulcer, this time on his left foot, which led to his absence from work in late 1992 and again from April 1993 until July 1993. After returning to work for a few months, he was again absent from October 1993 to June 1995.

In November 1993, Ingles was notified that he was being terminated because he had exhausted all of his leave benefits, including thirteen weeks of sick time, available vacation, holidays, personal day, and birthday. In December 1993, after receiving correspon-

dence from Ingles's attorney requesting that he be reinstated because his termination allegedly violated the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, NMG reinstated Ingles to his former position and restored his benefits. NMG later learned that Ingles was not covered by the FMLA due to the limited number of hours he had worked in the prior year. Consequently, as Ingles concedes, NMG was not obligated to reinstate him. Nevertheless, NMG allowed him to remain employed even after ascertaining that his prior discharge did not violate the FMLA.

In 1991, after his first surgery, Ingles's physicians requested that Ingles work only on carpeted floors at the restaurant. About two-thirds of the restaurant was carpeted; the other third was uncarpeted and had a hard, marble floor. Ingles claims that NMG accommodated his request to work only on carpeted surfaces after his 1991 surgery, but refused to accommodate him after his return to work in July 1993. Ingles contends that this failure to accommodate him led to further complications with his feet and necessitated more surgery in November 1993, causing him to be absent from work until June 1995.

Ingles filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in October 1993, asserting that NMG had failed to accommodate his disability in violation of the ADA. On December 21, 1993, Ingles filed a second charge of discrimination with the EEOC alleging that he was terminated in November 1993 in retaliation for filing his prior charge. On December 1, 1995, he filed this suit claiming that NMG violated the FMLA when it terminated his employment in 1993. In February 1996, Ingles received his right-to-sue letter from the EEOC on his first charge of discrimination. In March 1996, Ingles amended his complaint in this action to include a claim under the ADA, alleging that NMG had failed to accommodate his disability and had wrongfully terminated him while on medical leave. On March 20, 1996, Ingles received his second right-to-sue letter from the EEOC based on his charge that NMG terminated him in 1993 in retaliation for his filing the first EEOC charge. He never sought leave, however, to file a second amended complaint to include a claim for retaliation. Ingles resigned in November 1996, at which time he was working only on carpeted or matted surfaces in the restaurant. On September 26, 1996, Ingles's FMLA claim was dismissed with prejudice pursuant to an agreed order. Hence, Ingles's remaining claims are brought under the ADA.

## II. *Analysis*

### A. *The Standard for Summary Judgment*

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). The moving party, however, need not negate the elements of the non-movant's case. *See Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15; *Wallace,* 80 F.3d at 1047; *Little,* 37 F.3d at 1069, 1075. The controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. *See Palmer v. BRG of Ga., Inc.,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401,

402 n. 5, 112 L.Ed.2d 349 (1990); *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Judwin Properties, Inc. v. United States Fire Ins. Co.,* 973 F.2d 432, 435 (5th Cir.1992). Nevertheless, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden." *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)); *see Wallace,* 80 F.3d at 1047; *Little,* 37 F.3d at 1075. Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *See Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. "In such situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.

### B. *Americans with Disabilities Act*

The ADA is designed to prevent otherwise qualified individuals from being discriminated against in employment based on a disability. *See* 29 C.F.R. Part 1630; *Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155, 160–61 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996). The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also Taylor,* 93 F.3d at 162; *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir.1995); *Daugherty v. City of El Paso,* 56 F.3d 695, 696 (5th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996); *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 725 (5th Cir.1995). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the employment position

that such individual holds or desires." 42 U.S.C. § 12111(8).

The language adopted in the ADA tracks that of the Rehabilitation Act of 1973, which provides in part that " '[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, ... be subjected to discrimination under any program or activity receiving federal financial assistance.' " *White v. York Int'l Corp.,* 45 F.3d 357, 360 n. 5 (10th Cir.1995) (quoting 29 U.S.C. § 794(a)). "Because the ADA expressly requires its provisions to be interpreted in a way that 'prevents imposition of inconsistent or conflicting standards for the same requirements' under the two statutes," case law interpreting the Rehabilitation Act may be relied upon in actions brought under the ADA. Id. (quoting 42 U.S.C. § 12117(b)); *see also Bolton v. Scrivner, Inc.,* 36 F.3d 939, 942–43 (10th Cir.1994), *cert. denied,* 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995) (citing 29 C.F.R. Part 1630 App., § 1630.2(g)); *Chandler v. City of Dallas,* 2 F.3d 1385, 1391 n. 18 (5th Cir.1993), *cert. denied,* 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994). "Thus, whether suit is filed against a federally-funded entity under the Rehabilitation Act or against a private employer under the ADA, the substantive standards for determining liability are the same." *Myers v. Hose,* 50 F.3d 278, 281 (4th Cir.1995).

### 1. *Burden of Proof*

To recover under the ADA, Ingles must prove that he was discriminated against on the basis of his disability. *See Jacques v. Clean–Up Group, Inc.,* 96 F.3d 506, 510–11 (1st Cir.1996); *Allison v. Department of Corrections,* 94 F.3d 494, 497 (8th Cir.1996); *Taylor,* 93 F.3d at 162; *Daigle,* 70 F.3d at 396; *Pegues v. Emerson Elec. Co.,* 913 F.Supp. 976, 979 (N.D.Miss.1996). He may present either direct evidence of disability discrimination or may employ the indirect method of proof utilized by the courts in other types of discrimination cases. *See Taylor,* 93 F.3d at 162; *Rizzo v. Children's World Learning Ctrs., Inc.,* 84 F.3d 758, 762 (5th Cir.1996); *Daigle,* 70 F.3d at 396; *see also McDonnell Douglas Corp. v. Green,* 411

U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). In the absence of direct evidence of discrimination, the plaintiff can establish a *prima facie* case under the ADA by showing that:

(1) he has a "disability;"

(2) he is "qualified" for the job; and

(3) an adverse employment decision was made solely because of his disability.

*Turco v. Hoechst Celanese Chemical Group,* 101 F.3d 1090, 1092 (5th Cir.1996); *see Rizzo,* 84 F.3d at 763. Prior to the opinions in *Turco* and *Rizzo,* the Fifth Circuit outlined the elements of a *prima facie* case as requiring the plaintiff to demonstrate that:

(1) he suffers from a disability;

(2) he is a qualified individual for the job;

(3) he was subject to an adverse employment action; and

(4) he was replaced by a non-disabled person or was treated less favorably than non-disabled employees.

*See Daigle,* 70 F.3d at 396; *EEOC v. Brown & Root, Inc.,* 688 F.2d 338, 340–41 (5th Cir. 1982); *see also EEOC v. Texas Bus Lines,* 923 F.Supp. 965, 969 (S.D.Tex.1996); *Villarreal v. J.E. Merit Constrs., Inc.,* 895 F.Supp. 149, 151–52 (S.D.Tex.1995).

If the plaintiff succeeds in making this *prima facie* showing, a rebuttable presumption of discrimination arises, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See Daigle,* 70 F.3d at 396 (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)); *Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471, 1478 n. 19 (5th Cir.1992), *cert. denied,* 507 U.S. 909, 113 S.Ct. 1253, 122 L.Ed.2d 652 (1993); *Thomas v. Mississippi State Dep't of Health,* 934 F.Supp. 768, 771 (S.D.Miss.1996); *Texas Bus Lines,* 923 F.Supp. at 969–70. While the employer need not prove that its actions were motivated by the legitimate reason, it must produce some evidence in support of its proffered reason. *See Daigle,* 70 F.3d at 396 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–10, 113 S.Ct. 2742, 2747–49, 125 L.Ed.2d 407 (1993)); *Texas Bus Lines,* 923 F.Supp. at 970. "The '[d]efendant's burden is merely one of production; the burden of proving that defendant's articulated reasons

are pretextual and that discrimination was the real reason for the discharge remains at all times with the plaintiff." *Id.* (quoting *Turco v. Hoechst Celanese Chem. Group, Inc.,* 906 F.Supp. 1120, 1126 (S.D.Tex.1995), *aff'd,* 101 F.3d 1090 (5th Cir.1996)). "If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of production." *Daigle,* 70 F.3d at 396 (quoting *St. Mary's Honor Ctr.,* 509 U.S. at 507, 113 S.Ct. at 2747); *see Thomas,* 934 F.Supp. at 771; *Texas Bus Lines,* 923 F.Supp. at 970.

If the employer meets its burden of production, the presumption is dissolved, and the burden shifts back to the plaintiff to prove that the proffered reason is a pretext for discrimination-that the defendant's alleged nondiscriminatory reason is false and the real reason for the adverse action is disability discrimination. *See Thomas,* 934 F.Supp. at 772. As with discrimination cases generally, the plaintiff at all times bears the ultimate burden of persuading the trier of fact that he has been the victim of illegal discrimination based on his disability. *See Daigle,* 70 F.3d at 396 (citing *St. Mary's Honor Ctr.,* 509 U.S. at 511, 113 S.Ct. at 2749–50); *White,* 45 F.3d at 361; *Thomas,* 934 F.Supp. at 771.

2. *"Disability" within the Meaning of the ADA*

To prevail under the ADA, the plaintiff must show that he has a "disability" as defined by the ADA. *See Bridges v. City of Bossier,* 92 F.3d 329, 332 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 770, 136 L.Ed.2d 715 (1997); *Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 758 (5th Cir.1996).

The ADA defines a disability as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual;

(B) a record of such impairment; or

(C) being regarded as having such impairment.

42 U.S.C. § 12102(2); *see Villarreal,* 895 F.Supp. at 152. The ADA further restricts the meaning of physical and mental impairment to:

(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or

(2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

*Dutcher,* 53 F.3d at 726 n. 5 (quoting 29 C.F.R. § 1630.2(h)(1), (2)). "A physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA." *Id.* at 726.

The statute requires an impairment that "substantially limits one or more of the major life activities." *Id.* The ADA defines neither "substantially limits" nor "major life activities," but the EEOC's regulations under the ADA, which adopt the same definition of major life activities as used in the Rehabilitation Act, provide guidance. *See id.; see also Bolton,* 36 F.3d at 942; *Chandler,* 2 F.3d at 1391. "Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Dutcher,* 53 F.3d at 726 (quoting 29 C.F.R. § 1630.2(i)); *see Ray v. Glidden Co.,* 85 F.3d 227, 229 (5th Cir.1996); *Bolton,* 36 F.3d at 942; *Chandler,* 2 F.3d at 1390. The factors that are to be considered in determining whether an impairment substantially limits a major activity include:

(1) the nature and severity of the impairment;

(2) the duration of the impairment; and

(3) the long term impact of the impairment.

*Oswalt v. Sara Lee Corp.,* 74 F.3d 91, 92 (5th Cir.1996) (citing 29 C.F.R. § 1630.2(j)(2)); *see Dutcher,* 53 F.3d at 726; *Bolton,* 36 F.3d at 943. "Substantially limited" is defined as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity.

*Dutcher,* 53 F.3d 726 n. 8 (quoting 29 C.F.R. § 1630.2(j)(i), (ii)); *see also Rogers,* 87 F.3d at 755.

To meet the first requirement of a *prima facie* case—establishing that he is disabled under the ADA–Ingles must show that he has an impairment which is severe enough to rise to the level of a disability that substantially limits one or more major life activities. With regard to diabetes, an EEOC guideline recognizes insulin-dependent diabetes as a disability under the ADA. In relevant part it states, "[a] diabetic who without insulin would lapse into a coma would be substantially limited because the individual cannot perform major life activities without the aid of medication." 29 C.F.R. Part 1630 App., Interpretative Guidance to § 1630.2(j) (1994). The EEOC guidelines, however, have been found to be invalid to the extent they create a *per se* rule that insulin-dependent diabetes is an ADA disability. *See Coghlan v. H.J. Heinz Co.,* 851 F.Supp. 808, 813 (N.D.Tex. 1994). The Fifth Circuit has declined to decide whether insulin-dependent diabetes is considered a disability under the ADA. *See Daugherty,* 56 F.3d at 696 n. 1. In any event, Ingles is not dependent on insulin for treatment of his diabetes. While he takes Glucotrol, an oral medication, there is no evidence to suggest that he would fall into a coma or otherwise be unable to function if he failed to take it.

Nonetheless, Ingles maintains that, as a non-insulin dependent diabetic, he is substantially limited in the major life activities of eating and walking. Specifically, he alleges that he is substantially limited in his ability to eat because he must maintain a "normal, good, healthy diet." He also contends that he is disabled in the major life activity of

walking because his diabetes has affected his feet, requiring multiple surgeries and the wearing of specially designed boots, half shoes, or shoes with inserts.

■ While Ingles must eat at regular intervals, this does not rise to a protected ADA disability; it merely means that he must monitor his food intake closer than some persons. This does not, however, substantially limit his ability to eat in general because Ingles is not prohibited from eating specific types of foods. He is fully capable of eating and properly digesting food. The Fifth Circuit has found that when persons are able to train themselves to do everything that they are supposed to do, thereby performing all the basic tasks, they are not substantially limited in that area. *See Dutcher*, 53 F.3d at 726. It is difficult to imagine that having to maintain a normal, healthy diet constitutes a disability. Therefore, Ingles's claim that he is substantially limited in the major life activity of eating must fail.

■ There is no question that Ingles suffers from an impairment with regard to his feet. In the last few years, he has undergone surgeries on both of his feet, resulting in amputation of toes and removal of pieces of bone. In addition, he is required to wear particular types of footwear, and his feet will continue to require special care. He maintains that he has limited walking capabilities because extensive walking on hard surfaces, such as the hard, marble floor in the NMG restaurant, aggravates his condition and causes significant harm to his feet. Nevertheless, "[w]hether an impairment substantially limits a major life activity must be determined, not by how 'disabling' the impairment sounds, but rather the impact of the impairment on the individual." *McKey v. Occidental Chem. Corp.*, 956 F.Supp. 1313, 1318 (S.D.Tex.1997). Thus, the inquiry must focus on whether Ingles's diabetes and surgeries adversely affect him as he functions in society.

Recently, the Third Circuit addressed the issue of what constitutes a walking disability. In reviewing the EEOC Compliance Manual, the court held that "both the regulations and the manual make clear that comparatively moderate restrictions on the ability to walk are not disabilities." *Kelly v. Drexel Univ.*, 94 F.3d 102, 106 (3d Cir.1996). In *Kelly*, the plaintiff, who suffered from post-traumatic degenerative hip disease in his right hip and protrusio acetabulum of the right hip joint, alleged that he was disabled because he was substantially limited in the major life activity of walking. *See id.* at 105. He claimed that he could not walk for more than a mile without pain, could not jog at all, and had significant difficulty climbing stairs. *See id.* at 106. Although the court noted that the plaintiff had an impairment, there was insufficient evidence to find that a major life activity was substantially limited. *See id.* at 108. The court then reviewed a number of cases involving the ability to walk, stating:

> It is difficult, indeed perhaps not possible, to draw a bright line delineating the point at which a condition affecting an employee's ability to walk can be regarded as a disability within the ADA. Yet we agree with the general thrust of these district courts cases. While we are not unfeeling with respect to Kelly's condition, still we simply cannot regard it as a disability under the ADA as it does not substantially limit him in the major life activity of walking.

*Id.* at 108; *see Kriskovic v. Wal–Mart Stores, Inc.*, 948 F.Supp. 1355, 1361 (E.D.Wis.1996) (plaintiff's ankle injury limiting his ability to walk, stand, lift, push, pull, and climb not a substantial limitation on a major life activity); *Stone v. Entergy Servs., Inc.*, No. 94–2669, 1995 WL 368473, at *3 (E.D.La. June 20, 1995) (plaintiff with partial paralysis, muscle weakness, and uneven legs as residual effects of polio who testified that he had limited endurance, experienced difficulty climbing stairs, and walked significantly slower than average person found not to be substantially limited in ability to walk); *Graver v. National Eng'g Co.*, No. 94–C–1229, 1995 WL 443944, at *11 (N.D.Ill. July 25, 1995) (employee with ankle ailments, including arthritis, causing significant pain when walking and walking with a pronounced limp not disabled under ADA); *Richardson v. William Powell Co.*, No. C–1–93–528, 1994 WL 760695, at *3, *7 (S.D.Ohio Nov.10, 1994) (plaintiff's degenerative arthritis in her hip causing her to limp and experience difficulty

climbing stairs does not interfere with a major life activity).

In the case at bar, the evidence indicates that while Ingles's diabetes has adversely affected his feet, it has not substantially limited his ability to walk as required by the ADA. *See* 29 C.F.R. § 1630.2(i). At deposition, Ingles conceded that his walking limitation is not so great as to require the use of a "handicapped" parking permit. In fact, while he was employed with NMG, he parked in the regular employee parking lot, which was farther from the store than the customer parking area, and had no problem walking on the hard surface to reach the restaurant on the third floor. Moreover, he admitted that he shops by himself several times a week at a grocery store with tiled floors and is able to do all the shopping he wishes at malls. In addition, Ingles testified that his apartment is on the third floor, requiring him to climb two flights of hard-surfaced stairs, which apparently give him no trouble. He also complied with his doctor's recommendation that he engage in exercise by working at NMG, which included the activity of walking. Moreover, since September 1990, he has regularly played an organ for a church, which typically involves depressing thirty-two pedals with his feet. His impairment also did not prevent him from maintaining two other part-time jobs from 1993 to 1995. In light of all these walking activities that are not impacted by his alleged limitation on his ability to walk, Ingles admitted at deposition that "the limitation caused by the diabetes is not that [he] can't walk on hard surfaces at all, but simply that [he] shouldn't do so for extended periods of time carrying trays." Hence, it is apparent from Ingles's deposition testimony that he is capable of tending to his normal, daily activities, indicating that he does not have a disability cognizable under the ADA. *See Dutcher,* 53 F.3d at 726 (no disability where plaintiff is able to "take care of normal activities of daily living"); *Kresge v. Circuitek,* 958 F.Supp. 223, 225 (E.D.Pa.1997) ("inability to stand or walk for prolonged periods, even though most people may be able to do so, cannot be said to be a substantial limitation"); *Gilday v. Mecosta County,* 920 F.Supp. 792, 796 (W.D.Mich.1996) (no ADA disability where diabetic was not prevented "from caring for himself, performing manual tasks, learning or performing any of the other major life activities").

Ingles's physician, Dr. Mark S. Lisch ("Lisch"), submitted an affidavit addressing the medical aspects of Ingles's condition. The majority of the affidavit, however, describes how Ingles's feet are affected by his diabetes and details his surgeries, rather than describing how the major life activity of walking is affected. Lisch also opines that the cause of Ingles's foot ulcers was "excessive walking on hard surfaces with very few physical breaks to rest his feet." He further states that "his opinions are born out of fact that since Robert Ingles has returned to work in 1995 he was allowed to work on carpeted surfaces, he did not have a reoccurance [sic] of the ulcers up to December 31, 1996." Lisch overlooks the fact, however, that although Ingles had been continually allowed to limit his work to carpeted surfaces after his 1991 surgery, he developed a foot ulcer in late 1992 and, as a consequence, was absent from work at that time and again from April 1993 to July 1993. It was only after July 1993 that Ingles was assigned to work on both marble and carpeted surfaces. In any event, Ingles alone has personal knowledge of how his diabetes affects his major life activities. *See generally Darnell v. Target Stores,* 16 F.3d 174, 177 (7th Cir. 1994). As evident from his deposition testimony, Ingles's diabetes does not significantly restrict his ability to walk. *See generally Hileman v. City of Dallas,* 115 F.3d 352, 354 (5th Cir.1997). Therefore, Ingles's claim that his diabetes substantially limits the major life activity of walking must be rejected.

### 3. *"Record of" Having a Disability*

To the extent Ingles claims in his response to NMG's motion for summary judgment and in his cross-motion for partial summary judgment that he has a "record of" being disabled, that issue is not properly before the court, as it was not raised in his original complaint or in his amended complaint. As such, it cannot now be raised for the first time in response to a motion for summary judgment. *See Kansas Mun. Gas Agency v. Vesta Energy Co.,* 840 F.Supp. 814, 821

(D.Kan.1993) (party cannot alter basis for recovery in summary judgment response); *see also Davis v. A.G. Edwards & Sons, Inc.,* 823 F.2d 105, 107 (5th Cir.1987). In any event, because Ingles's impairment is not a disability within the parameters of the ADA, his record of having such an impairment, likewise, cannot be actionable under the ADA.

### 4. *"Regarded as" Having a Disability*

■■■■ Ingles further alleges in his response to the motion for summary judgment that NMG regarded him as having a disability. He proffers a memorandum written to his personnel file by Crystal Smith, NMG's Human Resources Manager, in support of this assertion. The memorandum refers to a comment allegedly made by Nina Fabian in Employee Relations, stating that "since [Ingles] had this note from his Doctor then we were doing him a disservice allowing him to work at all since so much of his job was to walk on hard surfaces." The only major life activity the memorandum could pertain to is that of working. To be substantially limited in the major life activity of working, however, a person must be restricted in performing a class of jobs or a broad range of jobs as compared to the average person having similar training and abilities. *See* 29 C.F.R. § 1630.2(j)(3). Thus, an employee who is regarded as being unable to perform a specific job does not fall within the statute. *See Bridges,* 92 F.3d at 332; *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 190 (5th Cir. 1996); Ray, 85 F.3d at 229. Exclusion from a particular job is not a substantial limitation on the major life activity of working. *See* 29 C.F.R. § 1630.2(j)(3). In addition, the inability to perform a narrow range of jobs does not constitute a substantial limitation on working. *See McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d 369, 373 (6th Cir.1997); *Wooten v. Farmland Foods,* 58 F.3d 382, 386 (8th Cir.1995). At most, the memorandum reflects the opinion of one NMG employee of unknown rank about Ingles's ability to perform a single job. It does not suggest Ingles is unable to perform a class or broad range of jobs, as required under the ADA.

Indeed, at deposition, Ingles conceded that no one at NMG regarded him as being disabled. Therefore, he is now precluded from contradicting his prior sworn deposition testimony in a response to a motion for summary judgment. "It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.'" *Crowe v. Henry,* 115 F.3d 294, 298 n. 4 (5th Cir.1997) (quoting *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 496 (5th Cir.1996)); *see Bank of Illinois v. Allied Signal Safety Restraint Sys.,* 75 F.3d 1162, 1168–69 (7th Cir.1996); *Russell v. Acme-Evans Co.,* 51 F.3d 64, 67–68 (7th Cir.1995); *Thurman v. Sears, Roebuck & Co.,* 952 F.2d 128, 137 n. 23 (5th Cir.), *cert. denied,* 506 U.S. 845, 113 S.Ct. 136, 121 L.Ed.2d 89 (1992); *Albertson v. T.J. Stevenson & Co.,* 749 F.2d 223, 228 (5th Cir.1984); *Gray v. Ameritech Corp.,* 937 F.Supp. 762, 766–69 (N.D.Ill.1996). In fact, it was because NMG did not regard him as disabled in 1993 that it expected him to perform his job as a waiter on both carpeted and hard surfaces. Thus, any claim by Ingles that NMG regarded him as disabled is without merit.

Therefore, Ingles has failed to produce evidence that would satisfy the first prong of a *prima facie* case under the ADA. Because Ingles has not established that he is disabled as defined by the ADA, there is no need to address his failure-to-accommodate claim.

### C. *Discriminatory Discharge*

■■ Ingles contends that he was discriminatorily discharged by NMG in November 1993 because of his disability. NMG argues that Ingles's amended complaint does not include a wrongful termination claim. Contrary to NMG's assertion, however, the amended complaint includes allegations in ¶¶ 43–45 that while on medical leave he was "wrongfully terminated," his employment was terminated with "knowledge or reckless disregard," and he is entitled to damages amounting to "loss of pay, benefits, and mental anguish...."

As discussed above, Ingles has not shown that he is disabled within the parameters of the ADA. Thus, NMG could not have terminated him due to a disability in violation of the ADA. Moreover, at deposition, Ingles admitted that he was terminated from NMG

in 1993 because he had exhausted all of his available leave benefits. Ingles further conceded that if he were disabled but had *not* exhausted those benefits, NMG would *not* have terminated his employment in 1993. At deposition, the following exchange occurred:

Q: Neiman's told you that you were terminated because you used up your available benefits, right?

A: Correct.

Q: ... You're contending in this lawsuit that you were discharged because of your disability, correct?

A: Yes.

Q: Do you agree with me that you were terminated because you used up your available leave benefits?

A: Yes.

Q: And that had you-is it your position that had you been disabled but that you had not used up your benefits, Neiman's would not have terminated you?

A: I believe I understand you correctly. I'd say yes.

Hence, the unrefuted evidence demonstrates that Ingles was terminated because he had no remaining leave benefits, not because he had diabetes. *See generally Harris v. Polk County,* 103 F.3d 696, 697 (8th Cir. 1996); *Siefken v. Village of Arlington Heights,* 65 F.3d 664, 666 (7th Cir.1995); *Burfield v. Brown, Moore & Flint, Inc.,* 51 F.3d 583, 590 (5th Cir.1995); *Swearingen v. Owens–Corning Fiberglas Corp.,* 968 F.2d 559, 563–64 (5th Cir.1992). NMG reinstated Ingles after receiving correspondence from his attorney contending that his discharge violated the FMLA, not the ADA. Although Ingles continued to suffer from diabetes and its complications, when NMG ascertained that he was not covered by the FMLA, he was retained by NMG rather than terminated, thus demonstrating no discriminatory animus arising from his alleged disability. Furthermore, when Ingles filed his second EEOC charge in December 1993, he stated under oath that he had been terminated in November 1993 in retaliation for filing the first charge, not because of a disability. Hence, it cannot be said that Ingles's diabetes was either the sole cause of his discharge or even that it was a determining factor.

Therefore, Ingles's discriminatory discharge claim under the ADA is without factual or legal basis.

III. *Conclusion*

Accordingly, NMG's Motion for Summary Judgment is GRANTED, and Ingles's Motion for Partial Summary Judgment is DENIED. There exist no outstanding issues of material fact with respect to Ingles's claims under the ADA, and NMG is entitled to judgment as a matter of law.

IT IS SO ORDERED.