**Luke E. McCLURG, Plaintiff,**

**v.**

**GTECH CORPORATION, Defendant.**

**No. 95–4193–SAC.**

United States District Court,
D. Kansas.

July 22, 1999.

**1152**

Cheryl D. Myers, Michael B. Myers, Myers & Myers, Topeka, KS, for plaintiff.

Donald S. Lee, Topeka, KS, Thomas E. Wright, Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This employment discrimination case comes before the court on the defendant GTECH Corporation's ("GTECH") motion for partial summary judgment (Dk. 89). The plaintiff alleges religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.;* disability discrimination, harassment and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12117[a] ("ADA"); and retaliatory discharge for filing a worker's compensation claim in violation of Kansas common-law tort law. The defendant seeks summary judgment as to the plaintiff's ADA claims, common-law retaliatory discharge claim, and part of the Title VII retaliation claim.

## SUMMARY JUDGMENT STANDARDS

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; it requires " 'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines*, 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Industries, Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991)). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

Summary judgments are "used sparingly in employment discrimination cases." *Hardin v. Hussmann Corp.*, 45 F.3d 262, 264 (8th Cir.1995). Because discrimination claims often turn on the employer's intent, courts ordinarily consider summary judgment inappropriate to settle an issue like intent. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir.1994); *see Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir.1994) ("[T]he summary judgment standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." (quotation and citation omitted)). Even so, summary judgment is not "per se improper," *Washington v. Lake County, Ill.*, 969 F.2d 250, 253 (7th Cir.1992), and may be useful in weeding out claims and cases obviously lacking merit, *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 709 (10th Cir.1988), *overruled on other grounds*, *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995).

## STATEMENT OF UNCONTROVERTED FACTS

For purposes of this motion only, the court considers the following to be the uncontroverted facts[1] relevant to its ruling:

1. GTECH hired the plaintiff Luke McClurg ("McClurg") on December 15, 1987, as a computer operator trainee in Topeka, Kansas. During his employment,

---

1. Neither party put forth an exemplary effort in presenting its statement of facts in an organized and informative manner. Both parties repeatedly cited record which did not directly support the purported statement of fact. In many instances, the court could not even discern whether the cited record inferentially supported the statement, because the record and explanation was incomplete. The parties' less than commendable efforts in briefing this matter frustrated any attempt at an expeditious disposition.

McClurg was promoted several times, and his job title when he was terminated on March 3, 1996, was control room operator III. In July of 1996, the plaintiff weighed approximately 385 pounds and testified to always having a weight problem.

2. On August 2, 1993, McClurg reported to GTECH that he had suffered an off-work injury to his left knee and foot. GTECH granted him a medical leave of absence for four and one-half weeks and assisted him in preparing forms to obtain short-term disability payments.

3. After the injury, McClurg began wearing a leg brace to work. When it was rainy or icy he always wore the brace, and he wore it occasionally at other times.

4. The record is controverted as to whether McClurg's supervisors knew of the plaintiff's difficulties with his chair and console as a result of his leg injury and leg brace and whether his supervisors had received written, as well as oral, requests from McClurg for some accommodation of leg injury. In November of 1995, McClurg included in one of his turnover reports a request that all chairs in the control room be returned to the "up" setting as "[i]t poses a special difficulty for me personally (not to mention a very real hazard) if I try to sit down in a chair that is too low." (Dk.90, Ex. E).

5. In December of 1995, McClurg reported in writing to his supervisor, Tom Desch, a work-related carpal tunnel injury to his right wrist and hand. Upon learning of the injury, GTECH did not contest that the injury occurred on the job and assisted McClurg in filing the appropriate workers' compensation forms, obtaining payment for medical bills, and arranging for medical treatment and a worksite evaluation by a physical therapist.

6. In January of 1996, McClurg received time off to undergo physical therapy for his carpal tunnel injury. On January 19, 1996, McClurg's physical therapist evaluated his work station and recommended certain changes in a written re-

port. GTECH implemented the recommended changes providing a headset for telephone calls and modifying the chair to remain in its highest position.[2] The physical therapist indicated she would provide a wrist rest for McClurg, and McClurg already owned a wrist brace. McClurg later told co-workers that the chair modified to stay in the highest position caused him physical discomfort.

7. On February 24, 1996, McClurg underwent carpal tunnel surgery. GTECH gave McClurg a medical leave of absence for this surgery. In an activity/work form dated February 19, 1996, McClurg's treating physician wrote: "Patient is to remain off work for six weeks due to his carpal tunnel surgery February 20, 1996." (Dk.101, Ex.1). In an activity/work form dated February 27, 1996, McClurg's physician wrote:

> Restrictions: Patient is seen today for recheck post carpal tunnel syndrome. He can return to one handed work only. This work should be work that can ordinarily be done with one hand and would not put undue stress on his left hand and wrist. If this type of work is unavailable, he should remain off work until further notice.

(Dk.101, Ex.2). In a letter dated March 1, 1996, McClurg's attorney wrote GTECH stating that based on his physician's restrictions McClurg was unable to perform his regular job duties and asking what positions could be performed with only one hand.

8. Pursuant to the treating physician's written restrictions, GTECH had arranged light duty work for McClurg which was to be performed with only one hand. The work included hotline, dispatch, communications work with a headset, and limited data entry on a computer. In his affidavit, McClurg opines that this planned light duty work would have required the use of both hands and that David Douglas, GTECH's site director in Kansas, com-

2. The plaintiff's citations do not controvert this statement.

mented in his presence that "there is no such thing as one-handed work."

9. When McClurg returned from his medical leave of absence on March 3, 1996, GTECH terminated him before he even attempted the light duty work.

10. McClurg's supervisor, Tom Desch, recalls that McClurg's workers' compensation claim was a subject discussed in meetings about his termination. Desch could not recall any comment that McClurg's workers' compensation coverage would end with his termination of employment. After his termination, Liberty Mutual stopped paying the temporary total disability benefits but continued paying for McClurg's medical treatment. McClurg, however, did submit a bill to David Douglas for tests done at Cotton–O'Neil clinic. This unpaid bill was returned to McClurg following his termination. Eventually, Liberty Mutual paid the bill.

11. In his deposition of July 18, 1996, McClurg testified that his physician had verbally recommended that he seek "another line of work because it would be too stressful and too damaging to continue to do keyboarding." (McClurg Dep. I, p. 150). In June of 1996, McClurg's physician wrote as his impression that McClurg "will probably have to do work that is not oft repetitive with the right wrist on a rather permanent basis. He could type short intervals for not more than an hour with a rest between, but would basically have to do a very non-repetitive type of work." (Dk.101, Ex.5).

12. In his deposition and affidavit, McClurg testified that he is qualified to be trained as a customer service representative at GTECH. According to David Douglas, GTECH's site director in Kansas, customer service representatives are required to lift terminals, monitors and other equipment weighing up to sixty pounds. Douglas averred that as of June 30, 1997, there were no vacancies or available positions as customer service representatives. David Baird who served as GTECH's site director in Topeka from August of 1991 through August of 1995 testified that he could not recall McClurg requesting duty as a customer service representative.

13. In January and February of 1996, GTECH and Kansas Lottery were having numerous problems with "timeouts" during attempts to interface with the AS400 mainframe. GTECH created a new file transfer program ("FTP") command to address this situation. The new command was circulated in an Operations Request Form ("ORF") dated February 16, 1996. McClurg testified that he read this ORF on February 18, 1996, and performed this command later the same day for the first time and typed in the wrong command because he did not understand part of the ORF. McClurg immediately called his supervisor and the correct command was entered. This error caused a time out of the Instants game lasting a little over four minutes. Kansas Lottery officials were unhappy about this error, as they had been recently promised the new command would end the problems.

14. On March 3, 1996, McClurg was presented a corrective action dated the same day. The terms of this corrective action had not been discussed with McClurg prior to it being prepared and presented to him. The corrective action recited that McClurg had "failed to follow procedures to connect to the Lottery's AS400 mainframe." It further stated: "Due to the visibility of this incident by our customer the Kansas Lottery, and the declining performance issues that have been discussed and documented with Luke over the past two years, we have no choice but to terminate his employment with GTECH Corporation." (Dk.90, Ex. S).

15. Douglas testified that in deciding to terminate McClurg based on declining performance he had reviewed McClurg's current performance files from and after August of 1995 which was when Douglas became GTECH's site director in Topeka. Douglas also explained that he was familiar with McClurg's performance reviews dating before August of 1995 as he had

looked them over when he started as site director.

16. On July 17, 1996, McClurg filed an administrative complaint with the United States Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC") alleging discrimination and retaliation in violation of the ADA. Upon receipt of the EEOC's right to sue notice, the plaintiff filed a second amended verified complaint adding claims of discrimination and retaliation under the ADA.

## ADA DISABILITY DISCRIMINATION

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). Discriminatory acts prohibited under the ADA include "denying equal jobs and benefits" because of the disability, "not making reasonable accommodations to the known physical ... limitations," and "denying employment opportunities ... based on the need ... to make reasonable accommodations." 42 U.S.C. § 12112(b)(4); (5)(A) and (B). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The plaintiff claims that GTECH failed and refused to accommodate his disabilities and terminated his employment because of his disabilities. In the pretrial order, the plaintiff claims, in relevant part, that:

> Defendant failed to make adequate and appropriate modifications and/or adjustments to plaintiff's work environment, and/or to the manner and/or circumstances under which plaintiff's position was customarily performed that would enable him to perform the essential functions of his job. Defendant's summary termination of plaintiff upon the pretext of poor work performance and/or failure to provide disability accommodation, denied the plaintiff equal benefits and privileges of employment as are enjoyed by defendant's other similarly situated employees without disabilities....
>
> On and after July 1993, plaintiff requested accommodation for these disabilities to Tom Desch which included, but were not limited to, repair to the automatic door closer, for a chair of the proper height, dimension and construction which would allow plaintiff to work without pain and without distortion of his leg, knee and foot (plaintiff wore a leg brace from an earlier injury), provision of a desk that would afford sufficient work space and room beneath its surface, adjustment to the main computer console and that he not be required to load and lift boxes of computer paper weighing 45 to 60 pounds. Defendant never provided plaintiff reasonable accommodation and required plaintiff to work in spite of his disabilities without accommodation....
>
> Plaintiff also sought reasonable accommodation by notice to Tom Desch and/or Brenda Durkin in the form of requests for reduced workload, wrist brace, wrist rest, and changes to the placement and height of the computer console, and provision of a telephone headset. Defendant never provided plaintiff reasonable accommodation....
>
> At all relevant times during his employment with defendant, the plaintiff gave notice to defendant that the requested accommodations had not been made. However, defendant intentionally and/or with malice and/or with reckless indifference failed to provide accommodations tot he plaintiff.

(Dk.111, pp. 9–11). Not found in the pretrial order is any claim that GTECH failed to reasonably accommodate the plaintiff with a transfer or reassignment to a vacant position of customer service representative. Because the pretrial order supersedes the pleadings and controls the subsequent course of litigation, the court need not decide whether a transfer or

reassignment to a vacant position would have been a reasonable accommodation for the plaintiff. *Hernandez v. Alexander,* 671 F.2d 402, 407 (10th Cir.1982); *see Gowan v. United States Dept. of Air Force,* 148 F.3d 1182, 1192 (10th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 593, 142 L.Ed.2d 535 (1998).

The plaintiff makes the untenable argument that he has direct evidence to prove GTECH's discriminatory intent in not accommodating his carpal tunnel injury. The evidence concerns a letter written by GTECH's site director, David Douglas, to its workers' compensation carrier, regarding the performance of light duty work following the carpal tunnel surgery. Even assuming this letter was written after McClurg had failed to follow the proper procedures for connecting the Lottery's AS400 mainframe on February 18, 1996, the court cannot see how this fact amounts to anything more than circumstantial evidence relevant in showing that the employer's business reasons for terminating McClurg may be pretextual.

Without direct evidence, the plaintiff's ADA claims are evaluated under the burden-shifting approach borrowed from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Butler v. City of Prairie Village, Kan.,* 172 F.3d 736, 747 (10th Cir.1999). Under *McDonnell Douglas,* the plaintiff carries the initial burden of establishing a prima facie case by a preponderance of the evidence. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. A prima facie case raises " 'a rebuttable presumption' " of a discriminatory intent. *See Ingels v. Thiokol Corp.,* 42 F.3d 616, 621 (10th Cir. 1994) (quoting *Branson v. Price River Coal Co.,* 853 F.2d 768, 771 (10th Cir. 1988)). If a plaintiff fails to prove any element of his prima facie case, summary judgment is proper. After the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct.

1817. If the defendant offers such a reason for its actions, the presumption drops out of the case and the burden reverts to the plaintiff to show the defendant's proffered reason was a pretext for discrimination. *Id.* at 804–05, 93 S.Ct. 1817. "On summary judgment, . . . , the plaintiff's burden is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1321 (10th Cir.1997) (citation omitted). "To avoid summary judgment, a plaintiff need not demonstrate that discriminatory reasons motivated the employer's decision." *Id.*

█ To establish a prima facie case of discrimination under the ADA, the plaintiff must demonstrate: (1) that he is disabled within the meaning of the ADA; (2) that he is qualified, "that is, . . . [he] is qualified to perform the essential functions of the job, with or without reasonable accommodation," and (3) that the employer terminated or took adverse employment action against the plaintiff "under circumstances which give rise to an inference that the termination [or other action] was based on . . . [his] disability." *Morgan v. Hilti, Inc.,* 108 F.3d at 1323 (citation omitted); *see Siemon v. AT & T Corp.,* 117 F.3d 1173, 1175 (10th Cir.1997); *see White v. York Intern. Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995).

A person is disabled within the meaning of the ADA if, *inter alia,* he has "a physical or mental impairment that substantially limits one or more of . . . [his] major life activities." 42 U.S.C. § 12102(2)(A). "The statutory requirement that disability determinations be made 'with respect to the individual,' contemplates an individualized, and case-by-case determination of whether a given impairment substantially limits a major life activity of the individual." *Sutton v. United Air Lines, Inc.,* 130 F.3d 893, 897 (10th Cir.1997) (citations omitted), *aff'd,* 119 S.Ct. 2139, 67 U.S.L.W. 3681 (U.S. June 22, 1999). For purposes of this motion, the defendant contests whether

the plaintiff is disabled with respect to the leg injury but concedes that the carpal tunnel injury is disabling.

The definition of disability can be broken down into three elements—impairment, major life activity, and substantial limitation—that correspond to a three-step process. *See Poindexter v. Atchison, Topeka & Santa Fe Railway,* 168 F.3d 1228, 1230 (10th Cir.1999) (citing *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998)). The court first determines whether the plaintiff has an impairment. *Id.* As defined in the EEOC regulations, a "physical impairment" is "[a]ny physiological disorder, or condition, ... affecting one or more of the following body systems: neurological, musculoskeletal...." 29 C.F.R. § 1630.2(h)(1). There appears to be no dispute that the plaintiff's leg injury is an impairment. "Second, the court must identify the life activity upon which the plaintiff relies and determine whether it constitutes a major life activity." *Poindexter,* 168 F.3d at 1230 (citation omitted). Major life activities "mean functions such as ..., performing manual tasks, walking, ..., and working." 29·C.F.R. § 1630.2(i). " '[O]ther major life activities include, but are not limited to, sitting, standing, lifting, and reaching.' " *Poindexter,* 168 F.3d at 1231 (quoting 29 C.F.R. pt. 1630, app. at 347 (1998)). "[A] plaintiff must articulate with precision, the impairment alleged and the major life activity affected by that impairment." *Poindexter,* 168 F.3d at 1232. In opposing summary judgment, the plaintiff specifically asserts only walking and sitting as the major life activities restricted by his leg injury. The court must limit its analysis to those major life activities asserted by the plaintiff. *Id.* at 1231.

■ " '[T]ying the two statutory phrases together, [the court] ask[s] whether the impairment substantially limited the major life activity.' " *Poindexter,* 168 F.3d at 1230 (quoting *Bragdon v. Abbott,* 118 S.Ct. at 2202). As provided by the EEOC regulations, "substantially limits" means "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j). In determining whether a person is substantially limited in a major life activity, the court considers: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Pack v. Kmart Corp.,* 166 F.3d 1300, 1305 (10th Cir.1999) (citations omitted), *petition for cert. filed,* 67 U.S.L.W. 3707 (May 5, 1999) (No. 98–17). "A 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken." *Sutton v. United Air Lines, Inc.,* —— U.S. ——, 119 S.Ct. 2139, 2146, 144 L.Ed.2d 450. Thus, it is clear that the impairment must be significant. *Sutton,* 130 F.3d at 898. If the plaintiff presents sufficient evidence to allow a reasonable jury to conclude that he is substantially limited in sitting or walking, then she is not required to present evidence specifically comparing her own sitting or walking capability to that of an average person. *Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1173–74 (10th Cir.1996).

■ McClurg does not come forth with sufficient detailed evidence to support any substantial limitations on his capability to sit or walk as a result of his leg injury. Admittedly, "[i]t is difficult, indeed perhaps not possible, to draw a bright line delineating the point at which a condition affecting an employee's ability to walk can be regarded as a disability within the ADA." *Kelly v. Drexel University,* 94 F.3d

102, 108 (3rd Cir.1996); *see* 29 C.F.R. Pt. 1630, App. § 1630.2(j) ("[A]n individual whose legs are paralyzed" or who "can only walk for very brief periods of time" is substantially limited in the activity of walking). Still, the burden rests with the plaintiff to offer more than conclusory and general statements about his leg injury. " 'Whether an impairment substantially limits a major life activity must be determined, not by how "disabling" the impairment sounds, but rather the impact of the impairment on the individual.' " *Ingles v. Neiman Marcus Group,* 974 F.Supp. 996, 1002 (S.D.Tex.1997) (quoting *McKey v. Occidental Chem. Corp.,* 956 F.Supp. 1313, 1318 (S.D.Tex.1997)); *see Aldrich v. Boeing Co.,* 146 F.3d 1265, 1270 (10th Cir. 1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999). That he uses a leg brace on occasion, walks with a limp, and sits with his leg extended is not enough evidence to allow a reasonable juror to conclude that the plaintiff's capacity for walking or sitting is significantly restricted. *See, e.g., Taylor v. Pathmark Stores, Inc.,* 177 F.3d 180, 1999 WL 312384, at *4–5 (3d Cir. May 19, 1999) (Plaintiff's "ability to walk and stand is not significantly less than that of an average person" just because he requires ten-minute hourly breaks and walks with a slight limp); *Talk v. Delta Airlines, Inc.,* 165 F.3d 1021, 1025 (5th Cir.1999) (That the plaintiff "walk[s] with a limp and move[s] at a significantly slower pace than the average person" does not reach "the level of a substantial impairment") *Penny v. United Parcel Serv.,* 128 F.3d 408, 415 (6th Cir.1997) (walking with "moderate difficulty or pain . . . does not rise to the level of a disability") (collecting cases); *Kelly v. Drexel Univ.,* 94 F.3d 102, 109 (3d Cir. 1996) (plaintiff with "visible and apparent" limp who could not walk more than a mile, could not jog and had difficulty climbing stairs was not substantially limited in a major life activity) (collecting cases); *Ingles v. Neiman Marcus Group,* 974 F.Supp. 996, 1002 (S.D.Tex.1997) (The plaintiff was not disabled from walking despite numerous surgeries on both feet,

the need to wear special types of footwear, and a restriction against extensive walking on hard surfaces); *Graver v. National Eng'g Co.,* No. 94–C–1228, 1995 WL 443944, at *9–11 (N.D.Ill.1995) (Though he walked with a pronounced limp because of pain and stiffness in his ankles, the plaintiff was not significantly restricted in his ability to walk, care for himself, or work); *Richardson v. William Powell Co.,* No. C–1–93–528, 1994 WL 760695, at *3, *7 (S.D.Ohio Nov.10, 1994) (Degenerative arthritis in hip caused plaintiff to limp and to struggle climbing stairs, but it did not interfere with a major life activity). The record is devoid of any competent medical evidence regarding the nature, severity or duration of the plaintiff's leg injury. There is nothing showing that McClurg's leg injury impeded his ability "to accomplish everyday tasks," to "lead a normal, average life," or to perform the duties of a control room operator. *See Banks v. Hit or Miss, Inc.,* 996 F.Supp. 802, 807 (N.D.Ill.1998). Indeed, McClurg worked for nearly three years at GTECH after reporting the leg injury. Although conceivable that his injury may have diminished to some degree his former physical capacities for sitting and walking, there is no evidence that he is significantly restricted in those abilities as compared to the average person in the general population. The defendant GTECH is entitled to summary judgment on the ADA disability discrimination claim based on McClurg's leg injury.

■ Concerning McClurg's carpal tunnel injury, GTECH contends McClurg is unable to prove the second element of the prima facie case, that is, he is qualified to perform the essential functions of the job, with or without reasonable accommodation. In this circuit, there is a two-part test for determining whether a person is qualified under the ADA:

"First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship

to the job at issue. Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job at issue, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions."

*Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d at 1174 (quoting *White,* 45 F.3d at 361–62). To avoid summary judgment, the plaintiff must show that "he could the perform the essential functions of the job" despite his disability or "that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job." *Burch v. City of Nacogdoches,* 174 F.3d 615, 619 (5th Cir.1999). "The essential functions are those functions that the individual who holds the position must be able to perform unaided or with the assistance of a reasonable accommodation." 29 C.F.R. § 1630, App. § 1630.2(n). A job function is essential if eliminating it "fundamentally alters the nature of the job[ ], something the ADA does not require an employer to do." *White,* 45 F.3d at 362.

■ We find no genuine issue of material fact as to McClurg's inability to perform without accommodation the essential functions of the control room operator position. "Although ordinarily a fact question to be decided on a case-by-case basis," the plaintiff has "presented no evidence to rebut the conclusion that [keyboarding] is essential to [the position of control room operator III.]" *Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1124 (10th Cir.1995). As set out in GTECH's official position description, the "basic function" of this position is "operate computer equipment" by running programs and to "maintain the computer." (Dk.90, Ex. B). Nor does the plaintiff come forth with evidence that following his carpal tunnel injury, surgery and/or recuperation he regained the ability to operate the computer, including the keyboarding

ability, required in that position. Immediately following his surgery, his treating physician restricted McClurg from using his left hand, and his attorney wrote GTECH that McClurg could not perform his regular job duties. In his deposition taken just four months after his termination, McClurg testified that his doctor had orally "recommended that I would probably have to be retrained in another line of work because it would be too stressful and too damaging to continue to do keyboarding." (McClurg Dep. I, p. 150). In April of 1997, McClurg testified that he didn't believe he could perform most computer jobs because of his doctor's instructions and that he did not use computers and did not own one. (McClurg Dep. II, p. 112).[3]

When a job's essential functions cannot be performed without accommodation, an employer must provide those accommodations that are reasonable. Accommodations are reasonable unless they "would impose an undue hardship on the operation of the business" by "requiring significant difficulty or expense." 42 U.S.C. § 12111(10)(A). "Because the plaintiff bears the ultimate burden of proving he is a 'qualified individual' under the ADA, *see White v. York Int'l Corp.,* 45 F.3d 357, 361 (10th Cir.1995), he must produce sufficient evidence to make a prima facie showing that accommodation is possible, and then the burden shifts to the ... [defendant employer] 'to present evidence of its inability to accommodate.'" *Johnson v. City of Midwest City,* 166 F.3d 1221, 1999 WL 11312 (10th Cir. Jan.13, 1999) (table).

The summary judgment record is uncontroverted that GTECH provided McClurg with time off to undergo physical therapy for his carpal tunnel injury, that GTECH implemented the changes to McClurg's work station recommended by his physical therapist, and that GTECH granted McClurg a medical leave of absence for his

---

**3.** In December of 1997, McClurg averred for purposes of this motion that he owned and used a computer consistent with his physician's "restrictions." This subsequent averment does not create a material issue of fact, for the evidence remains uncontroverted as to the plaintiff's apparent inability to keyboard in February and March of 1996 and for a reasonable period thereafter.

surgery and recuperation. McClurg offers no evidence demonstrating that GTECH ignored his treating physician's restrictions and ordered him back to work after the surgery in violation of his physician's orders. McClurg's unsupported arguments to the contrary simply do not create a genuine issue of fact.

The record stands undisputed that McClurg's physician released him for one-handed work and that GTECH had arranged for temporary light duty to be performed with one hand. McClurg opines that this planned light duty work would have required him to use both hands. This opinion is simply speculation, for he offers no facts or basis in support of it. He does not show or explain why this light duty work could not have been performed at a slower pace with just one hand. There is nothing to indicate that GTECH did not understand and expect that McClurg would perform these assigned duties with only one hand while recovering from surgery. The record conclusively demonstrates that GTECH understood that McClurg would not be using his injured wrist while recovering from surgery. (Dk.101, Ex. 4). In short, the plaintiff has not demonstrated or raised a genuine issue of fact that the defendant failed to provide any reasonable accommodation that would have enabled him to perform the essential functions of his position.

■ McClurg fails to make a prima facie showing that accommodation was possible for him to perform the essential functions of the control room operator III position.[4] The court cannot find anything in the summary judgment record in support of such a showing. An employer is

not required under the ADA to accommodate an employee's disability by eliminating an essential function of his job. *See Smith v. Blue Cross Blue Shield of Kan., Inc.*, 102 F.3d 1075, 1076 (10th Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 54, 139 L.Ed.2d 18 (1997). The plaintiff offers nothing to document or demonstrate that any of the requested accommodations would have enabled him to perform the essential function of keyboarding. *See, e.g., Heidisch v. Ford Motor Co.*, 162 F.3d 1161, 1998 WL 552985 (6th Cir. Aug.14, 1998) (Plaintiff with carpal tunnel syndrome did not show he was otherwise qualified for an assembly position), *cert. denied,* —— U.S. ——, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999); *Mason v. Mountain States Tel. & Tel. Co.*, 124 F.3d 212, 1997 WL 525302, at *2 (9th Cir. Aug.13, 1997) (Carpal tunnel syndrome prevented plaintiff from being otherwise qualified as she could not type for the time required of credit consultants). To survive summary judgment on this issue, the plaintiff must offer something beyond his own "bald conclusion that with 'reasonable accommodations' he could have performed the 'essential functions' of the job." *See White v. York Intern. Corp.*, 45 F.3d at 362. The plaintiff has not met his burden to show he is a "qualified individual" entitled to the protection of the ADA. The court grants the defendant's motion for summary judgment as to the plaintiff's ADA disability discrimination claims.

## ADA RETALIATION CLAIM

■ In its statement of the case, GTECH's summary judgment memorandum mentions such a claim but devotes only one paragraph of argument[5] to this

---

4. As stated earlier, the court finds that the plaintiff no longer pleads reassignment or transfer as a reasonable accommodation in this case. The plaintiff's contentions and theories in the pretrial order span over nine pages. He specifically lists the different requested accommodations for his carpal tunnel injury, including: "reduced workload, wrist brace, wrist rest, and changes to the placement and height of the computer console, and provision of a telephone headset." (Dk.111,

p. 10). The plaintiff never lists or mentions reassignment or transfer as a possible or requested accommodation.

5. That the plaintiff is not a "qualified individual with a disability" does not bar an ADA retaliation claim. *See, e.g., Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 1999 WL 462669, at *3 (2nd Cir. July 9, 1999); *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 786 (3rd Cir.1998).

claim. Specifically, GTECH contends it was not on notice of any ADA claims at the time of the plaintiff's discharge and, therefore, no causal connection [6] can be established between the discharge and the filing of an administrative complaint or lawsuit. The plaintiff does not respond to this argument, and the court grants summary judgment on this claim concerning the alleged protected activity of "the filing and serving of his federal lawsuit." (Dk.111, p. 11). The plaintiff's ADA retaliation claim is not limited to this protected activity but also includes retaliation for making requests for accommodation and the letter of March 1, 1996. (Pretrial Order, Dk. 111, p. 11). Indeed, the ADA makes it "unlawful to coerce, intimate, threaten or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, . . ., any right granted or protected by this chapter." 42 U.S.C. § 12203(b). GTECH's motion does not address this other alleged protected activity. Nor is it the court's responsibility or inclination to convert GTECH's other arguments against the ADA discrimination claim or the state law workers' compensation retaliation claim so as to be applicable on the remaining ADA retaliation claim. Thus, the court denies summary judgment on the plaintiff's ADA retaliation claim except for the alleged protected activity of "the filing and serving of his federal lawsuit." (Dk.111, p. 11).

## STATE LAW WORKERS' COMPENSATION RETALIATION

The burden rests with the plaintiff to prove that the defendant discharged him in retaliation for filing a claim under the Kansas Workers' Compensation Act. *Ortega v. IBP,* 255 Kan. 513, 528, 874 P.2d 1188 (1994). The plaintiff can recover upon "proving that the discharge was 'based on,' 'because of,' 'motivated by' or 'due to' the employer's intent to retaliate." *Sanjuan v. IBP, Inc.,* 160 F.3d 1291, 1298 (10th Cir.1998) (quoting *Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 146–148, 815 P.2d 72 (1991)). The plaintiff need not prove that retaliation was the employer's sole motive or reason for the termination. *Brown,* 249 Kan. at 147, 815 P.2d 72. The plaintiff must establish his claim "by a preponderance of the evidence, but the evidence must be clear and convincing in nature." *Ortega v. IBP,* 255 Kan. 513, 528, 874 P.2d 1188 (1994). Evidence is clear if "it is certain, unambiguous, and plain to the understanding." *Id.* "It is convincing if it is reasonable and persuasive enough to cause the trier of fact to believe it." *Id.* (citing *Chandler v. Central Oil Corp., Inc.,* 253 Kan. 50, 58, 853 P.2d 649 (1993)).[7]

In analyzing state retaliatory discharge claims in Kansas, the federal courts consistently have applied the United States Supreme Court's burden shifting approach established in *McDonnell Douglas Corp. See Sanjuan v. IBP, Inc.,* 160 F.3d at 1298; *Chaparro v. IBP, Inc.,* 104 F.3d 367, 1996 WL 733771, at *5 (10th Cir. Dec.24, 1996) (Table), *cert. denied,* 522 U.S. 811, 118 S.Ct. 53, 139 L.Ed.2d 18 (1997); *see, e.g., Barnard v. ADM Milling Co., Inc.,* 987 F.Supp. 1337, 1344 (D.Kan. 1997); *Deghand v. Wal–Mart Stores, Inc.,* 926 F.Supp. 1002, 1017 (D.Kan.1996); *cf. Ortega v. IBP; Inc.,* 255 Kan. at 518, 874

---

**6.** To establish a prima facie case of retaliation under the ADA, the plaintiff must show: "(1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and employer's adverse action." *Morgan v. Hilti, Inc.,* 108 F.3d at 1324.

**7.** For the evidence to be clear and convincing, "the witnesses to a fact must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, direct and weighty; and the witnesses must be lacking in confusion as to the facts at issue." *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.,* 226 Kan. 70, 78, 596 P.2d 816 (1979) (citations omitted).

P.2d 1188 (After noting that the plaintiff must prove a causal nexus between the employee's protected activity and the employer's decision to terminate, the Kansas Supreme Court referred to the burden-shifting scheme from *McDonnell–Douglas* as the approach it utilizes in discrimination and free speech employment cases). To establish a prima facie case of retaliatory discharge under Kansas law, a plaintiff must produce evidence demonstrating: (1) that the plaintiff filed a claim for workers' compensation benefits or sustained an injury for which he might assert a future claim for such benefits; (2) that the employer had knowledge of the plaintiff's compensation claim or the fact that the plaintiff had sustained a work-related injury for which he might file a future claim for benefits; (3) that the employer terminated the plaintiff's employment; and (4) that a causal connection existed between the protected activity or injury, and the termination. *Sanjuan v. IBP, Inc.,* 160 F.3d at 1298; *Robinson v. Wilson Concrete Co.,* 913 F.Supp. 1476, 1483 (D.Kan.1996); *Huffman v. Ace Elec. Co., Inc.,* 883 F.Supp. 1469, 1475 (D.Kan.1995); *Rosas v. IBP, Inc.,* 869 F.Supp. 912, 916 (D.Kan.1994). To establish pretext in a retaliation claim, the plaintiff must show " 'that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason.' " *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1129 (10th Cir.1998) (quoting *Reynolds v. School Dist. No. 1, Denver, Colo.,* 69 F.3d 1523, 1535 (10th Cir.1995)). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Morgan v. Hilti, Inc.,* 108 F.3d at 1323 (Internal quotation marks and citation omitted). As quoted above, "the plaintiff's burden is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief." *Morgan v. Hilti, Inc.,* 108 F.3d at 1321 (citation omitted).

GTECH contests the plaintiff's proof of the causal connection element. It denies temporal proximity between the termination and McClurg's initial report on December 6, 1995, of a work-related injury. It dismisses as insignificant the fact that McClurg's workers' compensation claim was discussed during meetings on whether to terminate McClurg. Finally, GTECH attaches no weight to its failure to pay one of McClurg's medical bills in a timely fashion. Alternatively, GTECH argues McClurg was terminated for legitimate, nondiscriminatory reasons which he cannot show to be pretextual.

■ GTECH terminated McClurg less than three months after learning of his on-the-job injury, less than two months after giving McClurg time off for physical therapy, less than one month after receiving work restrictions from McClurg's physicians for this injury, less than one week after McClurg's carpal tunnel surgery, and less than two days after receiving from McClurg's attorney a letter requesting accommodations in compliance with the physician's work restrictions. "[P]rotected conduct closely followed by adverse action may justify an inference of retaliatory motive." *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 329 (10th Cir.), *cert. denied,* 518 U.S. 1019, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996). The Tenth Circuit has "rejected attempts to unduly stretch the 'close temporal proximity' required under this standard." *Id.* (quoting *Candelaria v. EG & G Energy Measurements, Inc.,* 33 F.3d 1259, 1262 (10th Cir.1994)). The Tenth Circuit recently summarized its position on this issue:

"[U]nless the termination is very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390,

1395 (10th Cir.1997). For example, we have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. *Ramirez [v. Oklahoma Dept. of Mental Health,]* 41 F.3d [584] at 596 [ (10th Cir.1991) ]. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation. *Richmond [v. ONEOK, Inc.,]* 120 F.3d [205] at 209 [ (10th Cir.1997) ]. *Anderson v. Coors Brewing Company,* 181 F.3d 1171, 1999 WL 444925, at *7 (10th Cir. June 30, 1999). For that matter, "[t]emporal proximity of adverse employment action to protected activity is not dispositive in the pretext analysis, but instead is simply one fact that may throw doubt on defendant's termination justification." *Vigil v. Colorado Dept. of Higher Educ.,* 1999 WL 407479 (10th Cir. June 21, 1999) (table) (citing *Conner,* 121 F.3d at 1398). The record arguably supports the proposition that GTECH may not have appreciated until late January and February of 1996 the extent of McClurg's on-the-job injury and its potential financial liabilities and difficulties in handling McClurg's injury and his workers' compensation claim. Thus, the temporal proximity here may be one and one-half months or less.

▮ The plaintiff's evidence of a causal connection and pretext includes more than temporal proximity. In meetings where McClurg's possible termination was being discussed, McClurg's supervisor, Tom Desch, recalls that McClurg's workers' compensation claim was mentioned. McClurg submitted one of his medical bills to the site director who apparently did not forward the bill to the human resources director but returned the unpaid bill after McClurg's termination. Sometime before McClurg's termination and with knowledge of McClurg's alleged poor job performance, Douglas wrote the insurance carrier stating GTECH would accommodate McClurg's injury following surgery. De-

spite being the most senior control operator, McClurg was terminated after he made an error on his first attempt in typing in the new FTP command. Finally, McClurg has come forth with evidence creating a genuine issue of material fact as to whether GTECH followed its own procedures when it terminated McClurg. The combined weight of all these circumstances, including temporal proximity, suffice for the causal connection element and would be enough for a reasonable finder of fact to determine that the defendant's articulated reasons for terminating McClurg are unworthy of belief. Thus, the court denies summary judgment on the plaintiff's retaliatory discharge claim.

## TITLE VII RETALIATION CLAIM— MAX GATES' INCIDENT

▮ In its motion, GTECH asserts that the plaintiff has alleged that it "intentionally assigned plaintiff to work with Max Gates, whom defendant knew or should have known was violent and would pose a threat to plaintiff's personal safety and welfare." (Dk.90, p. 34). GTECH seeks summary judgment arguing the plaintiff is unable to prove that GTECH knew or should have known that Gates would or could pose a threat to any other employee at its Kansas site. In response, McClurg avers that his supervisor, Tom Desch, knew from six different employees at the site that Gates was violent and that people were afraid to work with him.[8] In the pretrial order, the plaintiff's retaliation claim with respect to Max Gates is not limited to his violent tendencies:

> Defendant retaliated against plaintiff for exercising his religious based constitutional rights by placing Max Gates (who had agreed to swap time on a regular basis with him), on the same shift with plaintiff.

---

8. In its reply brief, GTECH objects to this averment as based on inadmissible hearsay testimony. The plaintiff's affidavit does not disclose the basis or circumstances for know-

ing that Desch learned about this matter from other employees. Consequently, the court is unable to conclude that this averment is necessarily hearsay testimony.

(Dk.111, p. 5). In light of the plaintiff's affidavit and the additional allegations found in the pretrial order, the court denies summary judgment on this claim.

IT IS THEREFORE ORDERED that the defendant's motion for partial summary judgment (Dk. 89) is granted as to the plaintiff's ADA disability discrimination claims and the ADA retaliation claim based on the alleged protected activity of filing and serving his federal lawsuit, and is denied on all other challenged claims.